Good morning. May I please the court, Joseph Seguenza for petitioners in this immigration appeal. The issues presented this morning are two, whether substantial evidence supports the IJ's denial of asylum, specifically with respect to the nexus requirement, and particularly in light of the recently published decision in SINHA. And the second issue is whether substantial evidence supports the IJ's denial of a motion to reopen by petitioners based on changed country conditions, specifically the December 2006 coup in Fiji. Petitioners submit with respect to the asylum claim, and in light of the recent decision in the context of widespread civil violence or unrest. And here as in SINHA, the petitioners have adequately proven that they suffered persecution or incidents of persecution that were specific to them. That would include both a male and a female petitioner, husband and wife. Here as in SINHA, we have incidents of violence with a racial slant to it. Can you tell me what they are? I mean, it did strike me that the evidence here was somewhat vaguer than in SINHA. So it would be helpful to me to know exactly what you're relying on in terms of both the incidents and the nexus. Certainly, Your Honor. I do admit that the evidence in SINHA was somewhat more Well, if I may approach it this way. With respect to the male petitioner in this particular case, he testified that because he believed that he was Indo-Fijian, that he suffered encounters with natives in Fiji whose pattern of practice would be to stop vehicles, especially after the 2000 coup. And if the vehicle didn't stop or the driver didn't stop, they would stone the vehicle. He was one of these victims and he testified that he believed he was targeted because he was Indo-Fijian. Let's get specific about the harm suffered. I mean, having stones thrown at a car is an incident, but I don't know that it rises to the level of persecution under our case law. What happened to him? What harm was suffered? Well, other than the vehicle stop, Your Honor, I believe he also testified that he had violent encounters with natives. He testified that, at least on two to three occasions, he suffered severe injury or physical harm in these encounters. What? What type of harm, Your Honor? It's one thing to say I suffered severe injury. What's that mean? Admittedly, that was not This isn't a good answer because the petitioner has to show that he's suffered past persecution. And to come in and say I suffered severe injury without specifics, and I've got to say this seems astonishingly specific, that really doesn't tell us very much. So what injuries were suffered? What evidence is there that there's more than just his generalized comment? Unfortunately, the record is not complete in that respect. I believe at A. R. 36, he testified, quote, I remember two to three times. Severely, they hurt. Close quote. Let me compare this case with with our case in Kamla Prasad, also involving an Indo-Fijian, where you have somebody who said he was jailed for several hours about good cause while in jail, was assaulted, beaten in the stomach, while being kicked from behind. Our Court determined that did not amount to past persecution. Is anything in the evidence, in the record, demonstrate that your client suffered more than that? No, Your Honor. But it's How does it qualify as past persecution? Well, unfortunately, neither the Court nor either counsel followed up on that question or that statement or testimony by a petitioner. Well, who does that Whose advantage or detriment is that? I mean, if petitioners are not able to prove that he was in the past, then he's obligated to demonstrate that he suffered from past persecution, that he qualifies for asylum. Isn't that piece, missing piece kind of a problem? Yes, it is. And perhaps that's a question on remand, if the Court feels that We're not allowed to remand for further development of the facts. We're stuck with the record as it is. Well, in terms of developing or determining whether or not there's a sufficient nexus or whether there is sufficient severity of harms I'm not asking about nexus. Let me be clear about this. I'm not asking about nexus in these questions. I'm asking about our case law and the regulations with regard to persecution means that you have to demonstrate something that's extraordinary. It's truly offensive, not simply the inconvenient or harassment that happens in too many parts of the world, for that matter, too many places in our own country. And the record here isn't very specific at all with regard to what befell the petitioner. So what is it that causes us to say that the IJ couldn't or the BIA couldn't reasonably have concluded, were compelled to determine that, in fact, what your client had suffered was past persecution? I would submit that the petitioner's testimony about incidents specific to him occurred in the aftermath or right after the December 2000 coup. Well, how does that tell us that he really suffered a severe injury or that what he described as severe injury is something that we would describe as severe injury? Well, his statement that he was, quote, severely injured was not rebutted or impeached. Also wasn't fleshed out. Admittedly, it wasn't as fleshed out as it could be, but you take it at face value, Your Honor. If there's no adverse credibility finding, you would have to take it at face value. I don't think I have to accept somebody's evaluative judgment as to what's severe. I don't see any case law that says I have to defer to petitioner with regard to what he thinks is severe. Well, I would submit that the female petitioner had also testified as to incidents specific to her. I don't see her about those. What was the ultimate – what was found here? Did the – as you notice in Sinha, all we actually held was that there was sufficient nexus and that there wasn't a finding as to severity or government inability, so we remanded. The question is, what was found here? What did the I.J. and the BIA rely on? Was it evidence or was it not? I would submit, Your Honor, the I.J.'s decision is not – But they're reliant. Right. The I.J.'s decision we would submit is not as clear as it could have been. He does state or he places undue reliance, we would submit, on the lack of corroborating evidence to prove either nexus or severity of harm. In the end, I believe, at the conclusion of his decision, he states that, assuming that Petitioners have testified credibly, that the incidents claimed don't rise to the level simply because he dismisses it as either economically motivated because of the perceived disparity in economic status between natives and endophagians. In terms of Judge Clifton's claim, was there a finding whether this was severe enough to be persecution? Did anybody ever – did the I.J. or the BIA ever make that find, any more than they did at the scene? Or did they make it on the basis that there wasn't sufficient connection to ethnicity? Or was it both? What did they find? It was both. I don't think – I'm not sure it was both. That's what I'm trying to tease out. Well, we – Was there a finding by either the I.J. or the BIA with regard to the severity question? On page 529 of the A.R., Your Honor, excuse me, yes, 529, top of the page, the I.J. refers to the incidents of harassment or relatively minor physical mistreatment. And he categorizes the Petitioners' incidents as falling within that category. And in that – in that respect, he appears to dismiss Petitioners' claims as de minimis. Also, he – on page 528 at the bottom, he seems to – or he states, rather, that their incidents were more economically motivated. I'm sorry? Your numbers are not matching. My numbers are running 82, 83, 84 with regard to the I.J. opinion. I'm sorry. I believe it's a consolidated record. I believe I'm referring to 528 and 529. Was part of the I.J.'s – excuse me – oral decision? Yes. Do you have the page number from the oral decision itself? I think it appears multiple times in the record. Do we happen to have a different version of it? I show it as pages 12 and 13, Your Honor. And if I may, just briefly, I see my time is almost up. He does state that, quote, the explanation for these events, or referring to Petitioners' incidents, might as well be, in large part, the economically based crime, which is referred to, et cetera. And then on the next page, he seems to categorize Petitioners' incidents as de minimis, as, quote, incidents of harassment or relatively minor physical mistreatment, close quote. And I believe that the I.J. has specifically made a nexus finding and a severity finding that is not supported by a subpoena for evidence. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Charles Kantor for the Attorney General. I, of course, agree with Petitioners' counsel that the immigration judge did make a severity finding. My reading of this is what he's saying is that the more serious incidents can't be tied, are economically based crime and can't be tied to the nexus, and that ones that have a nexus are minor, like teenagers pulling up the skirts of young women over their heads. That's the incidents of that nature can't be prosecution. But he wasn't saying that everything that happened, if it were tied to a nexus, wasn't persecution. Well, I guess I think when we look at the immigration, the board's decision on the merits, so that would be the April 4th, 2005 decision, I think that that reading, the reading of that decision supports a determination that there is a severity finding. Well, it is collapsed into a number of things, but the paragraph, the first full paragraph, says that the record contains evidence showing that the Respondents experienced some harassment based upon ethnicity, were victims of crime, and were   victims of sexual assault. So in other words, the crime part of that, I mean, they do seem to be factoring in the exact thing that we said in Senehill was really not permissible, which is that during a period of civil and political unrest, there were attacks on ethnic attacks, but because it was widespread, they seem to be saying it doesn't count. No. I disagree with that, Your Honor. I think that it's true that, it's certainly true, as the Court held in Senehill, if you've experienced persecution, it doesn't matter when you've experienced persecution, but where your, where the sorts of harms are, the sorts of harms that are part and parcel to some sort of ethnic strife or ethnic riot. For example, the, Mrs. Chandra testified that her one experience of harm was when she was taking the daughters to school, was on her way into school, and some of the ethnic Fijians were outside the gates and, you know, uttered some anti-Indian  That is, I think, part and parcel of, you know, what it means to be around and unfortunately, you know, in the midst of an ethnic strife or an ethnic riot. But- Your position is that it doesn't count. No, it does count, but, but it's got, an example would, an example would be a store owner during a riot, whose window, who, as one of many store owners in an ethnic neighborhood, their windows are broken, the store is looted. That, it is, it is, I think, qualitatively different if, if you yourself, you're only, you, you're the only, you're the only minority store owner and, and you're, you are specifically targeted and, and your, your store is looted and you are threatened, versus there's a mob going through the neighborhood and there's rocks thrown and windows are broken and that sort of thing. It can- Counsel, let me just ask in that connection, doesn't the record show that maybe Pajeet attacked a severely injured petitioner at one time? Well, I think that that gets to, to Judge Clifton's question and the record is, no, it doesn't. And to the extent it does, that part is in fact, clearly not, does not have a nexus to a protected ground. On page 577 of the consolidated administrative record, where he discusses, the he was attacked personally, or when he was carrying, walking through certain parts of the city, he says he was beaten, although he doesn't provide any, any detail or any, any, any development of that other than when he was beaten, how often, by whom, how severely. But he does state, it's page 577 of the, the consolidated administrative record. And so it's page 42 of the little, the transcript number, if you don't have the consolidated record in front of you. The second question, you said today that when you went to the city, they attacked me. Did they attack you because they thought you had a lot of money? Answer, yes. They thought that I might have, that I have money in my bag because I drive new cars. They heard that I might have money. That's why they attacked me. So to the extent that that, that that's the only time where he's actually alleging a, some sort of severe injury, then that is there by his own testimony. That's not, there's not a nexus to a protected ground. The times where there is a nexus or arguably a nexus is the sort of incidents such as throwing rocks at cars, such as the, the incident with, with Mrs. Chandra taking, going to the school. And by the way, I, I, why doesn't it just make sense to remand this case to the, to the BIA in light of Chandra and let them sort it out? Because it's very hard to figure out what here is a nexus finding and what here is a severity finding and how they fit together and so on. And, and there does seem to be some of, of the reasoning that was going on in Sinha that says, and you just repeated it, that if there's a, a, a major ethnic riot essentially going on, the fact that you're attacked on ethnic grounds doesn't count, which I, which I thought Chandra said isn't true. No, no, Your Honor. I misspoke. I don't disagree with that. I'm not asking you what you think. I'm saying that the, that the reasoning here seems to be by, by both the BIA and the IJ to incorporate some of that. So why isn't it fair to everybody concerned to just remand the case in light of Sinha? To the extent that the court feels that the decision is unclear and would otherwise need to guess at the reasonings for the agency's decision, then perhaps remand would be appropriate for the agency to make it more clear. I think it's clear enough. I don't think that, that we should be, that the court should be reading decisions. You know, the court needs to be sensitive, I think, to the fact that, that immigration judges are making decisions in these cases in thousands and thousands of cases a year. The board has tens of thousands per year. They are not always models of clarity. They're sometimes, unfortunately, they're rarely models of clarity, but... Well, counsel, let me just say, I agree with that. Let me just say, can't persecutors have mixed motives? Suppose one is economic, but the other is persecution because of ethnicity. Isn't that sufficient to satisfy the nexus requirement? Yes. Under this court's case law, certainly the pre-real ID case law that would apply, there can be, there can be mixed motives, but, and I don't dispute, I don't think that the agency took the position that some of the harms were not motivated, at least in part, on a, on the basis of ethnicity. I don't think that you could read the record and conclude otherwise. However, to the only time, and I think this maybe goes to Judge Berzon's question, the only time we have any incidents that could really even support a real finding of persecution, we have vague and unclear testimony, and we have an admission that it was not in part because I was Indian, it was because I might have, because they thought I had money. That was, that was Mr. Chandra's own words. So in that, in that, in that case, I don't think that it's, that it makes much sense to remand to the board, simply for the board to, to say, yes, we find no past persecution. We find that none of the harms, that the harms did not rise to the level of persecution. I don't think that the, the Chenery rule and, and remanding for, for, for the agency to make, to make a determination in the first instance also means that every time we're unsure about the basis for the agency's decision, we need to make, we need to remand so, so that the agency can get it, can, can get everything exactly right and fit in as, as neatly and as, as we would, and clearly as we would like. Well, let me share, for example, that my wife says that, that during the coup, she, she's not simply saying that, she's saying that she was threatened with being raped, killed, that she and her daughters were threatened with being killed or raped, and, and I, I believe she said for specifically ethnic reasons. Yes. Right? Yes. Right, so, and is that not, do we have a ruling as to whether that is severe enough to constitute persecution or not? Yes, Your Honor, you're, the, the Court's, the Court's holdings regarding threats is that it's only in rare circumstances where a threat by itself will be enough. Then there's a strange sentence in the middle of the IJ's opinion, which would appear to me to mean that they should be getting relief, when he says the evidence taken, all taken together, is considered by the Court as tending to show a pattern of practice of violence, intimidation, et cetera, against people of Indo-Fijian ethnicity. Now, we all know that if there is a pattern of practice, then, then that does support Absolutely. If there's What do we do with that? If there's a pattern of practice of persecution, of persecution, he does not say persecution. He says there is, this, this Court is well aware of the unfortunate plight of violence and intimidation against people of Indo-Fijian ethnicity is not persecution. It's not necessarily violent, you know, it's, it's, it's, this, for the same reason as, as Judge Clifton said, severely injured is not, you know, it's, it's, it's too, it's too wide open. So I don't, the, I think the immigration judge surely, certainly was not as careful with his words as he should have been in that passage. But he's not suggesting, and the Board has never found, to my knowledge, a pattern and practice of persecution in, in Fiji. So I think what he's saying is it's, for, unfortunately he's using the, the, the, the language of the regulation, but he's simply saying what this Court knows, that there is a long and sad history of, of, of, of occasional violence directed against ethnic Indians in Fiji. That's, that's not, that's not to be disputed. And it's not to, to say that, that, that the Petitioners weren't, you know, didn't have reason to, to think, you know, maybe we, maybe this is not the place we want to, want to live and want to, to raise our daughters. But unfortunately, they do not have a claim that, that they have not presented evidence that compels the conclusion that they have been persecuted. They have not presented evidence that compels the conclusion, conclusion that they have a well-founded fear of persecution. For that reason, the petition should be denied. And for the reasons stated in the brief, the motion to reopen should also be upheld. Thank you. I'll make it brief. Two points. We submit that the evidence does show that with the, the four coups in the history of Fiji, that there is a practice and pattern of individual persecution in that country, evidence by systematic ongoing abuse against targeted Indo-Fijians. Secondly, with respect to the motion to reopen, and the sworn affidavit of both Petitioners, Petitioner, Petitioners rather, would submit that there is a prime philosophy showing that the December 2006 coup was not just one of general civil unrest, but again is, it. But I thought the coup was by, was, was by some guy who was trying to, to limit the, the attacks on Indo-Fijians. Yes, admittedly so, Your Honor. However, there is still instability and uncertainty in that country. Fundamental human rights have been curtailed. Freedom of speech has been curtailed. None of that does go to, to the relevant grounds. No, but I believe the Petitioner's sworn affidavit includes references to family members who are living in Fiji, stating their personal experiences and their, and it's evidence of Indo-Fijians still being targeted by the Native Fijians in that country. Okay. Thank you, Your Honor.
judges: Dw Nelson, Berzon, Clifton, Cjj